IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: THOMAS W. DALTON, III, ) | |
| ) | |
| Debtor. ) | Case No. 07-03550-TOM7 |
| ) | |
| ) | Chapter 7 |
| ) | |
| WBRE, LLC; DALTON ) | |
| FINANCIAL GROUP, INC. ) | A.P. No. 08-00232-TOM |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| THE ESTATE OF THOMAS ) | |
| DALTON JR.; THOMAS DALTON ) | |
| III; GAIL DALTON; ET AL. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding came before the Court for hearing on September 2, 2009 (hereinafter, the "Hearing") on the Motion for Summary Judgment filed by Defendants Gail Dalton individually (hereinafter, "Gail Dalton") and as Executrix of the Estate of Thomas Dalton Jr. (hereinafter, "Dalton Jr.") and Thomas Dalton III (hereinafter, "Dalton III") (Gail Dalton, Dalton Jr., and Dalton III are hereinafter, collectively "Defendants") (hereinafter, "Defendants' Motion") (Adversary Proceeding No. (hereinafter, "AP No.") 54), the Motion for Partial Summary Judgment filed by Plaintiffs Dalton Financial Group, LLC (hereinafter, "Dalton Financial") and WBRE, LLC (hereinafter, "WBRE") (Dalton Financial and WBRE are hereinafter, collectively "Plaintiffs") (hereinafter, "Plaintiffs' Motion") (AP No. 66), the Response to Defendants' Motion filed by Plaintiffs (hereinafter, "Plaintiffs' Response") (AP No. 65), the Response to Plaintiffs' Motion filed by Defendants (hereinafter, "Defendants'

Response") (AP No. 72), and the Reply to Defendants' Motion filed by Defendants (AP No. 73). Appearing at the Hearing were David Hodges, attorney for the Plaintiffs and Floyd Gains and Andy Walsh, attorneys for the Defendants. At the Hearing, the Court ordered both counsel for Plaintiffs and Defendants to submit a proposed findings of fact and conclusions of law.[1] On September 18, 2009, the Court granted summary judgment only as to Gail Dalton. (AP No. 76) The Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). The Court has received and reviewed all pleadings and written submissions of the parties, including the briefs and evidence filed with the Court. Based on the evidence and arguments of the parties, the Court finds and concludes as follows.[2]

## I. FINDINGS OF FACT[3]

**A. Corporate History**

1. Plaintiff Dalton Financial is an Alabama corporation[4] that at all relevant times has been involved in various residential real estate investment ventures, including purchasing, renting, and occasional "flipping." (AP No. 59)

---

[1] This Memorandum Opinion is taken in part from both the Plaintiffs' and Defendants' Proposed Findings of Fact and Conclusions of Law (hereinafter, the "Plaintiffs' Proposed Opinion" and the "Defendants' Proposed Opinion") and has been edited, supplemented or changed by the court.

[2] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[4] The Complaint in this case indicates that Dalton Financial is a corporate entity "with [its] principal place of business in Jefferson County, Alabama." (Compl. ¶ 1.) The Defendants' Proposed Opinion indicates Dalton Financial is an Alabama limited liability company, like WBRE. There are no corporate records before the Court, and for purposes of this opinion, the

2

Case 07-03550-TOM7    Doc 115    Filed 12/02/09    Entered 12/02/09 15:38:57    Desc Main
Document    Page 2 of 20

2. Up until August 2005, Defendants Dalton Jr. who is now deceased, and his son Dalton III, each owned fifty percent (50%) of the shares of Dalton Financial. (AP No. 54) Both Dalton Jr. and Dalton III were officers of the company and actively involved in its day-to-day operations with business experience in real estate and real estate investment. (*Id.*)

3. In August 2005, following threats by Lamar Lackey ("Lackey") to sue Dalton Jr., Dalton III, and Dalton Financial, Dalton III transferred his shares in Dalton Financial to Plaintiff WBRE, LLC ("WBRE")[5] to resolve the threatened litigation. (AP No. 54 and AP No. 72, Ex. A) Neither Lackey nor WBRE paid any money to Dalton Jr., Dalton III, or Dalton Financial as part of the transfer of shares. (AP No. 72, Ex. A) After the transfer of shares, Dalton III continued to serve as President of Dalton Financial and remained actively involved in its day-to-day operations. (AP No. 54)

4. WBRE is an Alabama limited liability company involved in various residential real estate investment ventures, including purchasing, renting, and occasional "flipping." (AP No. 54 and AP No. 59) At all relevant times, WBRE has been under the exclusive management and control of Lackey, who, like Dalton Jr. and Dalton III, is an experienced businessman in real estate and real estate investment. (AP No. 54)

5. In January 2006, Dalton Jr. ceased being actively involved in the day-to-day operations of Dalton Financial, but retained his officer title and continued to be a 50% shareholder. (*Id.*) In April 2006, Dalton III purchased Dalton Jr.'s shares in Dalton Financial,[6]

---

Court will refer to Dalton Financial as a corporation.

[5] At the time of the transfer, WBRE was known as WBSRRE, LLC. The entity's name was changed some time after August 2005. (AP No. 54)

[6] In August 2005 Dalton III ceased to be an owner of Dalton Financial, but in April of 2006, after acquiring his father's interest in Dalton Financial, he became an owner once again.

3

Case 07-03550-TOM7    Doc 115    Filed 12/02/09    Entered 12/02/09 15:38:57    Desc Main
Document    Page 3 of 20

and from this point forward, Dalton Jr. had no involvement in the management of the business. Dalton Jr. specifically did not sign any Dalton Financial company checks after April 2006.[7] (*Id.*)

6. In April 2007, Lackey again threatened to sue Dalton III for various unspecified wrongs he believed Dalton III to have committed in their business dealings. (AP No. 72, Ex. A) Dalton III retained an attorney and mediation was scheduled. (*Id.*) However, prior to the mediation, financial concerns forced Dalton III to file for bankruptcy. (*Id.*) On August 9, 2007, Dalton III filed a petition under chapter seven of the United States Bankruptcy Code ("Petition Date"). As part of his bankruptcy filing, Dalton III surrendered his shares in Dalton Financial to the bankruptcy trustee. (AP No. 54, Ex. D) Dalton III resigned as an officer of Dalton Financial on August 13, 2007 through a letter of resignation addressed to Lamar Lackey of WBRE. (AP No. 54, Ex. A) Dalton III's resignation letter instructed that contact with him should be made through his attorneys. (*Id.*) Following his resignation, Dalton III had no involvement in the management of Dalton Financial. (AP No. 54)

7. On or before November 6, 2007, counsel for WBRE entered into negotiations with the bankruptcy trustee to purchase Dalton III's surrendered shares in Dalton Financial. (Proceeding No. (hereinafter, "Proc. No.") 65) On December 17, 2007, WBRE completed the purchase of Dalton III's surrendered shares in Dalton Financial from the chapter 7 Trustee, and became the sole owner of Dalton Financial. (Proc. No. 92)

---

[7] The affidavit of Lamar Lackey establishes that, at an unspecified point in 2006, Dalton Jr., Dalton III, and Lackey entered into a settlement agreement regarding how Dalton Financial would be managed. The terms of this agreement are not before the Court, and it is unclear when the settlement was reached in relation to Dalton Jr. selling his shares and ceasing to participate in management of Dalton Financial. (AP No. 58, Ex. A)

4

8. Despite Dalton Jr.'s lack of involvement in Dalton Financial since April 2006, he did not formally resign from Dalton Financial until December 24, 2007. (Proc. No. 54, Ex. C: Lackey Dep. 45:20-46:3, May 5, 2009)

**B.    Procedural History**

1. On August 10, 2007, following the Petition Date, the Clerk's office sent written notice of the bankruptcy filing to Dalton III's creditors, including Lackey, WBRE, and Dalton Financial. (Proc. No. 6) This written notice further informed creditors that November 5, 2007 was the deadline (hereinafter, the "Deadline") to object to discharge or to determine dischargeability of certain debts (the Deadline). (*Id*.)

2. During the bankruptcy, Plaintiffs and Lackey, although each listed as a creditor, did not serve any formal discovery requests on Dalton III, did not formally request production of any documents, and did not move to examine Dalton III or any other person under Federal Bankruptcy Rule 2004. (Proc. No. 87) Additionally, Plaintiffs and Lackey did not question Dalton III during the First Meeting of Creditors (hereinafter, the "341 Meeting"). (*Id.*)

3. Plaintiffs requested information through five email "discovery" requests to counsel for Dalton III prior to the Deadline, which were dated October 18, 2007, October 23, 2007, October 26, 2007, October 29, 2007, and November 2, 2007 (hereinafter, collectively, the "Emails"). (Proc. No. 87 and AP No. 54) Dalton III's bankruptcy attorney relayed the Emails to Dalton III, and Dalton III provided the requested records he found to his bankruptcy attorney for delivery to Plaintiffs' bankruptcy attorney. (AP No. 54, Ex. A) Other than the Emails discussed *supra*, Dalton III never received any requests for other information from Plaintiffs, Lackey, the bankruptcy trustee or any other person.[8] (*Id*.)

---

[8] Although two other emails from Plaintiffs' bankruptcy counsel to Dalton III's bankruptcy counsel dated November 7, 2007 and November 26, 2007 are in the Court's record, these emails

5

4. On the Deadline, certain creditors in Dalton III's bankruptcy case, including Dalton Financial and Lackey, filed a Motion to Extend Time to File Complaint Objecting to Dischargeability ("Motion to Extend"). (Proc. No. 63) Following a hearing on December 17, 2007, this Court issued an Order and Memorandum Opinion on December 20, 2007 denying the Motion to Extend. (Proc. No. 87) This Court's Memorandum Opinion noted that regarding each Email received by Dalton III, there was "a response from which it appear[ed] [Dalton III's] counsel fully cooperated." (*Id*.) The denial of the Motion to Extend was not appealed, and Dalton III received a discharge on February 13, 2008. (Proc. No. 94)

5. On July 28, 2008, the Plaintiffs filed a complaint (the "Complaint") against the Defendants in the Circuit Court of Jefferson County, Alabama. (Proc. No. 114) The Defendants removed the case on September 10, 2008 to the United States District Court for the Northern District of Alabama. (AP No. 6) The case was subsequently referred, upon the Defendants' motion, to this Court on September 23, 2008. (Proc. No. 113) The Complaint alleges four counts against the Defendants: Count I – Breach of Fiduciary Duties; Count II – Derivative Shareholder Action; Count III – Conversion of Corporate Assets; and Count IV – Corporate Oppression. The Complaint and the Plaintiffs' Motion state that the Plaintiffs' are only seeking damages for wrongful conduct occurring after the Petition Date. (Proc. No. 114 and AP No. 59)

6. On October 7, 2008, the Defendants filed an answer and counterclaim (hereinafter, the "Counterclaim") against the Plaintiffs. (AP No. 9) The Counterclaim contains two counts: Count I – Sanctions for Violation of Discharge Injunction and Count II – Alabama Litigation Accountability Act, Ala Code § 12-19-270, et seq. (*Id*.)

---

have no relevance to the issues before the Court because Dalton III did not receive them. (Proc. No. 80, Ex. A)

**C.     The Disputed Corporate Property**

1.     At the time Dalton III filed his bankruptcy petition, he was living in the residence at 1632 Barry Avenue, Birmingham, Alabama (the "Barry Avenue Property"), a property held in a land trust for the benefit of Dalton Financial.  (AP No. 54)  Dalton III disclosed this residential address on his bankruptcy petition.[9]  (*Id.*)  At that time, Dalton III had in his possession, in the basement of the Barry Avenue Property, certain Dalton Financial property, including corporate financial records, three folding tables, a chair, and 3 filing cabinets (hereinafter, the "Corporate Property").  (*Id.*)  Dalton III originally came into possession of the Corporate Property before the Petition Date based on his role as an officer of Dalton Financial.  (AP No. 54, Ex. A)

2.     During his bankruptcy, Dalton III did not access, give away, or otherwise use any Dalton Financial records or other property with the exception of accessing the corporate records to make them available as requested in the Emails.  (*Id.*)  On December 30, 2007, at the time he moved out of the Barry Avenue Property, Dalton III left all Corporate Property exactly where it had been as of the Petition Date: in the basement of the residence of the Barry Avenue Property. (*Id.*)  It was Dalton III's belief, based on discussions with his attorney, that he had provided to Plaintiffs and Lackey all the requested information regarding Dalton Financial.  (*Id.*)  Dalton III instructed his bankruptcy attorney to inform Lackey of his intent to vacate the Barry Avenue Property and to leave all of the Corporate Property in the basement of said property.  (*Id.*)  According to Lackey, this information did not reach him.  (AP No. 58)

---

[9] The Declaration filed by Dalton III with the Court on June 24, 2009 sets forth that Dalton III leased the Barry Avenue Property and paid all rent due up through the time he vacated the residence.  (AP Doc. 54, Ex. A)

7

**D. The Post Office Box and Key of Plaintiff Dalton Financial**

1. At the time he filed for bankruptcy, Dalton III was in possession of a key for a post office box used by Dalton Financial. (AP No. 58) Dalton III never received a request from Lackey or any other agent of Dalton Financial to turn over the post office box key, and he never turned over the key to Lackey. (AP No. 72, Ex. A)

2. Shortly after filing for bankruptcy, Dalton III gave the entire contents of the post office box to his bankruptcy attorney and asked him to give the documents to Lackey or his attorneys. (*Id.*) Dalton III continued to turn over the post office box contents to his attorney until the key no longer worked. (*Id.*)

3. Lackey did not gain access to the post office box of Dalton Financial until October 20, 2007. (AP No. 58)

**E. The Foreclosure of Real Properties Owned by Plaintiff Dalton Financial**

1. On or about March 18, 2004, as part of the routine business practices of Dalton Financial, Dalton Jr. obtained a note and mortgage in his personal name on a piece of real property located on 57th Street in Birmingham, Alabama (the "57th Street Property"). (AP No. 54, Ex. A) On December 29, 2004, Dalton Jr. deeded the 57th Street Property to the 1431 57th Street Trust, a land trust for the benefit of Dalton Financial. (*Id.*)

2. On or before December 29, 2004, as part of the routine business practices of Dalton Financial, Dalton Jr. obtained a note and mortgage in his personal name on a piece of real property located on 1st Street in Birmingham, Alabama (the "1st Street Property"). (*Id.*) On December 29, 2004, Dalton Jr. deeded the 1st Street Property to the 1816 1st Street Trust, a land trust for the benefit of Dalton Financial. (*Id.*)

8

3. The reason Dalton Jr. structured the purchase of the 57th Street Property and the 1st Street Property in this manner was to obtain a more favorable interest rate for the company. (*Id.*) Dalton Jr. did not personally benefit from the 57th Street and the 1st Street Property transactions. (*Id.*) He never used the properties in a personal capacity and did not obtain any other financial benefit, directly or indirectly, as a result of the transactions. (*Id.*) After transferring the 57th Street Property and the 1st Street Property to the land trust, Dalton Jr. never thereafter reacquired an interest of any kind in the properties.[10] (*Id.*)

4. Lackey represented that at the time Dalton III filed for bankruptcy, mortgages on properties owned by Dalton Financial were in Dalton III's name, and deeds on the properties were frequently in the name of a land trust. (AP No. 58) Nevertheless, post-petition, Dalton III never received a request from Plaintiffs or Lackey for information regarding land trusts or trustees, and thus Dalton III took no steps to inform Lackey which Dalton Financial properties were in trust or who the trustees were on these properties. (AP No. 72, Ex. A) Dalton III asserts that after the Petition Date, he never received a request from Plaintiffs or Lackey to contact any of Dalton Financial's financial institutions. (AP No. 72) The Court notes that many financial institutions are reflected on Dalton III's bankruptcy Schedule D ("Creditors Holding Secured Claims"); also shown are multiple properties subject to mortgage liens. (Proc. No. 1) All of this information was a matter of public record and could have been viewed by Lackey, Plaintiffs, or their counsel at any time.

5. Lackey asserts that he was not informed that the 57th Street Property and the 1st Street Property were held in a land trust and that he was not informed of the name of the trustee

---

[10] There is additional evidence before the Court concerning a Dalton Financial check dated December 31, 2005 signed by Dalton Jr. Plaintiffs' only argument against summary judgment as to Dalton Jr. involves the two properties on which mortgages were obtained. Accordingly, the Court does not further elaborate on the check in question. (AP No. 54)

9

or trustees. (AP No. 58, Ex. A) Similarly, Lackey did not know that Dalton III's wife was the mortgagor on the Barry Avenue Property and that said property was subject to foreclosure. (*Id*.)

6. During the course of Dalton III's bankruptcy, Plaintiffs and Lackey possessed documents and records identifying the mortgage companies on at least some of the properties owned by Dalton Financial and could have made payments to these mortgage companies to prevent foreclosures from occurring. (*Id*.; AP No. 54, Ex. C: Lackey Dep. 72, 78-80, 110-12, 124-29, 141-43)

7. Plaintiffs, through Lackey, did not make mortgage payments, resulting in properties owned by Dalton Financial falling into foreclosure. (*Id*.) On October 15, 2007, Peoples Bank & Trust foreclosed on five properties owned by Dalton Financial. (AP No. 58, Ex A.)

## II. CONCLUSIONS OF LAW

### A. Summary Judgment

Summary judgment is only appropriate if no genuine issue as to any material fact exists and if the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56[1]. The party moving for summary judgment has the burden of demonstrating that these conditions have been met. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court, in determining whether the movant has met their burden of proof, must consider the evidence and view it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co*., 398 U.S. 144 (1970). When the movant satisfies its initial burden, the burden shifts to the non-moving party. *Miranda v. B&B Cash Grocery Store Inc.*, 975 F.2d 1518 (11th Cir. 1992). Mere allegations, especially self-

---

[1] Rule 56 is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

serving allegations, of factual disputes, however, are not enough to defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

**B.     Defendant's Motion: Counts II and IV**

1.     Defendants move for summary judgment as to each of the four claims set forth in the Complaint, including Count I – Breach of Fiduciary Duties, Count II – Derivative Stockholder Action, Count III – Conversion of Corporate Assets, and Count IV – Corporate Oppression. Based upon the following, the Court finds that summary judgment is due to be granted for Counts II and IV.[11]

2.     Regarding Count II, as a matter of law, neither WBRE nor Dalton Financial are proper parties to a derivative stockholder action under the facts of this case. Under controlling Alabama law, derivative actions, by their very nature, involve circumstances in which a corporation refuses to vindicate its own rights and a shareholder seeks to advance the corporation's legal rights in a representative capacity. *See, e.g.*, *Ex parte Tiffin*, 879 So. 2d 1160, 1165 (Ala. 2003) (recognizing shareholder derivative suits to involve "'nominal plaintiff[s] representing the corporation,' which is the 'real party in interest'").

3.     In this case, WBRE, which has at all times been under the exclusive control of Lackey, was Dalton Financial's sole shareholder when suit was filed. Accordingly, there is no dispute that Dalton Financial was at the time of filing capable of pursuing claims on its own behalf. Moreover, Dalton Financial in fact brought direct claims for relief in the lawsuit. Thus, there can be no derivate shareholder claim in this case, and summary judgment is due to be granted on Count II.

---

[11] The Court notes that the Plaintiffs' Proposed Opinion grants the Defendants' Motion on Counts II and IV, because the facts relied upon to establish these claims against the Defendants occurred prior to the Petition Date.

11

4. Count IV, which is styled as a corporate oppression claim, is similarly without merit. In limited circumstances, Alabama law recognizes a cause of action for oppression in favor of a minority shareholder – not the corporation itself – against a majority shareholder. *See, e.g.*, *Stallworth v. AmSouth Bank of Ala.*, 709 So. 2d 458, 467-68 (Ala. 1997); Ala. Code §§ 10-2B-13.01 to 10-2B-13.32 (1975) (setting forth certain dissenting shareholder rights). Thus, only WBRE, not Dalton Financial, has standing to bring an oppression claim.

5. Despite being a properly situated party for an oppression claim, the Court recognizes that WBRE has never been a minority shareholder of Dalton Financial. From the time it acquired an ownership interest in Dalton Financial until December 17, 2007, WBRE was a 50% owner of the company. As of December 17, 2007, WBRE became the sole shareholder of Dalton Financial. No authority from any Alabama court has been cited to suggest that a 50% owner of a company can be oppressed within the eyes of the law by another shareholder that also has a 50% ownership interest.

6. Nevertheless, this Court need not definitely decide whether a 50% shareholder can maintain an oppression claim, because the undisputed facts of the case demonstrate that the only injury WBRE claims is to the corporation itself, specifically the alleged misappropriation and wrongful detention of Corporate Property. The right to recovery from these claimed wrongs belongs to Dalton Financial, not to WBRE as a shareholder, and as a result, WBRE can only pursue the oppression claim if it does so in a derivative capacity. *See, e.g.*, *James v. James*, 768 So. 2d 356, 358 (Ala. 2000) ("[W]hen a plaintiff's status as a shareholder is essential to his claims for damages, including damages based on claims of suppression and oppression, the claims are derivative claims and must be brought on behalf of the corporation."); *Brooks v. Hill*, 717 So. 2d 759, 762 (Ala. 1998) ("[A]n allegation of waste of corporate assets does not permit a

12

minority stockholder to recover on his own behalf; rather, such wrongdoing gives rise only to a derivative claim, which must be brought on behalf of the corporation"); *Galbreath v. Scott*, 433 So. 2d 454, 457 (Ala.1983) (same).

7.  As previously found, however, WBRE is barred from bringing a derivative claim because Dalton Financial is capable, and has in fact, brought claims. Accordingly, WBRE's attempt to bring a direct claim as an allegedly oppressed shareholder fails, and Defendants are entitled to summary judgment as to Count IV.

**C.  Defendants' Motion: Count I—Breach of Fiduciary Duty**

1.  Alabama has for years recognized that "[c]orporate officers are required to act with fidelity and in good faith, subordinating their personal interests to the interests of the corporation." *Michaud v. Morris*, 603 So. 2d 886, 888 (Ala. 1992) (quoting *Hardy v. Hardy*, 507 So. 2d 404, 406 (Ala. 1986)). These fiduciary obligations of corporate officers and directors are currently codified in the Alabama Code. *See* Ala. Code § 10-2B-8.42; Ala. Code § 10-2B-8.30. Under the Code, corporate officers and directors are required to (1) act "[i]n good faith," (2) act "[w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances," and (3) act "[i]n a manner the director [or officer] believes to be in the best interests of the corporation." Ala. Code § 10-2B-8.42(a); Ala. Code § 10-2B-8.30(a).

2.  These corporate fiduciary duties are tempered by "what has become known as the 'business judgment' rule," which "allows corporate management the freedom to make decisions in conducting the corporation's internal business affairs." *Michaud*, 603 So. 2d at 888. The rule provides that so long as the corporate director's decision rest upon a "reasonable basis", is made "in good faith", and reflects the "best interest of the corporation", then "a court will not interfere…and substitute its judgment for that of the directors[.]" *Id*. at 888 (quoting *Roberts v.*

13

Case 07-03550-TOM7    Doc 115    Filed 12/02/09    Entered 12/02/09 15:38:57    Desc Main
Document      Page 13 of 20

*Alabama Power Co.*, 404 So. 2d 629, 631 (Ala. 1981) (quoting H. Henn, LAW OF CORPORATIONS, § 242 (2d ed. 1970))).

3. Further, it is a generally recognized legal principle that corporate fiduciary duties cease upon resignation:

> The rights, duties, and liabilities of an officer or director of a corporation generally terminate with his or her resignation. At the time a director or officer resigns from the corporation, his or her position of trust with the corporation is terminated and the fiduciary relationship ceases.

AM. JUR. 2d Corporations § 1238; *see also id.* § 1461 ("After there has been a severance of official relationship, either because of resignation or removal, generally, a director or officer occupies no relation of trust or confidence to the corporation."); *cf. L.A. Draper & Son, Inc. v. Wheelabrator-Frye, Inc.*, 813 F.2d 332, 337 (Ala. 1987) (Recognizing that certain duties and obligations of an agent to a principal cease upon the agent's resignation).

4. The Plaintiffs' are seeking damages for any conduct that breached a fiduciary duty following the Petition Date. Although Dalton Jr.[12] had not yet officially resigned as of the Petition Date, he had no active or fiduciary role in Dalton Financial following the purchase of his shares in April 2006. There is no assertion or allegation that any mortgages were owned or owed by Dalton Jr. Thus the Court finds that Dalton Jr. did not and could not have breached a fiduciary duty to the Plaintiffs following the Petition Date.

5. Plaintiffs attempt to saddle Dalton Jr. with liability for his allegedly improper acquisition of notes and mortgages in his personal name. First, these were pre-petition transactions, and thus, pursuant to Plaintiffs' Complaint and Motion, these transactions are not included in the alleged conduct. Additionally, there is no evidence to contradict the representations of Defendants that Dalton Jr., in exercising his business judgment, did this for the

---

[12] The Plaintiffs' Proposed Opinion does not address Dalton Jr.'s liability under Count I.

purpose of securing a more favorable interest rate for the company, rather than for personal gain. The transactions followed Dalton Financial's routine business practices, prior to WBRE acquiring an ownership interest in Dalton Financial. Dalton Jr. thus acted with the required "fidelity" and "good faith" of a corporate officer or director, and summary judgment is due to be granted.

6. Regarding Dalton III, the Plaintiffs partly base their claim of breach of fiduciary duty against him on his alleged failure to turn over corporate records and property of Dalton Financial, following the Petition Date. Within four days of the Petition Date, Dalton III resigned as an officer of Dalton Financial. It is unclear whether Alabama law imposes post-resignation fiduciary duties upon corporate officers. However, one corporate authority suggests that following resignation, a corporate officer is still imposed with custodial duties as to any corporate property remaining in the officer's possession "until other officers can be duly appointed to care therefor." AM. JUR. 2d Corporation § 1238.

7. It is undisputed that Dalton III in fact preserved all Dalton Financial property in his possession for more than four months, giving ample time for Dalton Financial and its principal Lackey to secure its return. Even viewing the facts most favorably towards the Plaintiffs, the record is abundantly clear that neither Lackey nor counsel for Plaintiffs took any affirmative steps to secure the property after Dalton III resigned from Dalton Financial. This Court noted in its previous opinion that Dalton Financial and Lackey failed to utilize the discovery procedures available in Dalton III's bankruptcy case. (Proc. No. 87) No one with Dalton Financial attended the 341 Meeting to question Dalton III or timely filed an objection to his discharge. No formal discovery took place. All that did occur was an exchange of five informal "discovery" emails with Dalton III's bankruptcy counsel at that time. The record

15

Case 07-03550-TOM7    Doc 115    Filed 12/02/09    Entered 12/02/09 15:38:57    Desc Main
Document    Page 15 of 20

reflects that Dalton III complied with each request his attorney relayed to him.  Additionally, despite Lackey's assertions to the contrary, the Emails indicate the Plaintiffs knew the Corporate Property was in Dalton III's possession.   Even with this knowledge, the Plaintiffs' failed to take steps to procure the Corporate Property.

8. The Plaintiffs allege Dalton's post-petition retention of a Dalton Financial post office box key and mail from the post office box constituted a breach of fiduciary duty.  The evidence is to the contrary, Dalton III turned over all post office box contents to his attorney for delivery to Lackey or Lackey's attorney, and he was never requested to turnover the key.

9. The Plaintiffs further allege that Dalton III withheld financial information from them regarding Dalton Financial properties and hindered their ability to work with lenders.  Plaintiffs made no request for information regarding lenders.  As discussed *supra*, the Plaintiffs and Lackey failed to take proper steps to procure any information regarding Dalton Financial and its properties.  All that is before the Court are the Emails, and again, the Court has already found that Dalton III properly complied with those requests.  The Court has little sympathy for the Plaintiffs' alleged "lack of knowledge" when Lackey admitted in his deposition that he received foreclosure notices from some of the lenders, but made no attempt to pay the mortgages on certain Dalton Financial property.  Further, as also previously noted, Lackey, Plaintiffs or their counsel could have obtained information by attending the meetings or examining Dalton III's bankruptcy schedules.  Finally, when Dalton III vacated the Barry Avenue Property, he conveyed to his bankruptcy attorney his intent to leave and the availability of the Corporate Property for retrieval.  Lackey was on notice from Dalton III's resignation letter that Dalton III would communicate with the Defendants through his bankruptcy attorney.  Whether or not Dalton III's bankruptcy attorney communicated this particular message to the Defendants and Lackey is not

for this Court to decide and has no bearing upon whether Dalton III breached his fiduciary duty. Thus, the Court finds that Dalton III cannot be said to have breached any existing fiduciary duty, and summary judgment is due to be granted on this count.

### D. Defendants' Motion: Count III—Conversion of Corporate Assets

1. With respect to conversion, "[t]he gist of the action is the wrongful exercise of dominion over property to the exclusion of or in defiance of a plaintiff's rights, *where the plaintiff has a general or special title to the property or the immediate right to possession.*" *Riscorp, Inc. v. Norman*, 915 So. 2d 1142, 1152-53 (Ala. 2005) (emphasis in original). A common law action for conversion will lie for (1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse, or (4) a wrongful detention. *SouthTrust Bank v. Donely*, 925 So. 2d 934, 939 (Ala. 2005).

2. At the outset, the Court finds the Complaint does not set forth any specific allegation or instance whereby Dalton Jr. converted Dalton Financial property.[13] The Plaintiffs' Response attempts to allege that Dalton Jr. is in some way liable for damages arising from the foreclosures of the 57th Street Property and the 1st Street Property, on which he obtained notes and mortgages in his name and later conveyed title to a land trust. These properties fell into foreclosure some time after the Petition Date. However, the record is clear that Dalton Jr. was not involved in the management of Dalton Financial after April 2006, and that as of the Petition Date, mortgages on Dalton Financial properties were in Dalton III's name. Thus, Dalton Jr. is not responsible for preventing Dalton Financial properties from falling into foreclosure in or after August 2007.

3. Additionally, Dalton Financial's claimed inability to prevent foreclosures of its

---

[13] The Plaintiff's Proposed Opinion does not discuss any claim of conversion against Dalton Jr.

17

properties was allegedly the result of Dalton III failing to turn over corporate records. Dalton Jr. cannot be deemed responsible for foreclosure related-losses when he was not even the person in possession of the disputed records. Therefore, summary judgment is due to be granted as to Count III against Dalton Jr.

4. Dalton Financial's final claim against Dalton III is for conversion based on the alleged detention and failure to turn over corporate records and other personal property. As noted, conversion involves (1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse, or (4) a wrongful detention. None of these four circumstances exist in this case. Dalton III did not wrongful[ly] take the Corporate Property in question, because he originally obtained it as part of his management role of Dalton Financial. There has been no illegal assumption of ownership or illegal use/misuse, because it is undisputed Dalton III merely held the property as a custodian in a segregated location and never used it for any purpose. Finally, there has been no wrongful detention because Dalton III made available all records he understood to have been requested. Dalton III had his attorney convey his intention to vacate the Barry Avenue Property which housed the Corporate Property to Plaintiffs' counsel so that all of the Corporate Property could be retrieved.

5. That Lackey professes not to have known the location of the disputed property is irrelevant. Although Dalton III was never asked to disclose the location, the Emails demonstrate that Dalton Financial knew the property was in Dalton III's possession. Dalton III disclosed his address on his bankruptcy petition, but he was never asked to disclose the location of the Corporate Property. Thus, summary judgment is due to be granted as to Count III.

18

Case 07-03550-TOM7   Doc 115   Filed 12/02/09   Entered 12/02/09 15:38:57   Desc Main
Document      Page 18 of 20

**E.     Plaintiffs' Motion for Summary Judgment**

1.     The Plaintiffs' Motion requests summary judgment as to Count I of the Counterclaim, which seeks sanctions for Plaintiffs' violation of the discharge injunction that exists as a result of this Court's February 13, 2008 Order discharging Dalton III in Case No. 07-03550-TOM7.[14]  The Plaintiffs' Motion requests that summary judgment be granted in favor of the Plaintiffs, because: 1) the Complaint limits its request for damages to post-petition occurrences and 2) there is allegedly no private right of action for violating a discharge injunction.

2.     The Court finds the Plaintiffs' Motion insufficient to warrant entry of summary judgment.  Other than several generalized assertions in the Plaintiffs' Motion and a scant recitation of case law, the Plaintiffs have failed to sufficiently persuade this Court that summary judgment is warranted.  The Plaintiffs do cite an affidavit of Lackey that they filed in support of their response to the Defendants' Motion; however, upon review of the affidavit, the Court finds it has no significant relevance to the Counterclaim.

3.     In sum, the Plaintiffs have not met their burden of proof under Rule 56 and summary judgment is accordingly due to be denied as to Count I of the Counterclaim.

---

[14] Plaintiffs have not moved for summary judgment as to Count II of the Counterclaim, requiring a trial as to this claim.

### III.   CONCLUSION

Based upon these findings and conclusions, the Motion for Summary Judgment of Defendants Dalton Jr. and Dalton III is GRANTED and the Motion for Partial Summary Judgment of Plaintiffs Dalton Financial, Inc. and WBRE, LLC on the Counterclaim is DENIED.

Therefore, it is hereby, **ORDERED, ADJUDGED** and **DECREED** that the Motion for Summary Judgment of Defendants Dalton Jr. and Dalton III is **GRANTED** and that the Motion for Partial Summary Judgment of Plaintiffs Dalton Financial, Inc. and WBRE, LLC on the Counterclaim is **DENIED**.

A separate order consistent with this Memorandum Opinion will be entered.

Dated this the   2nd   day of   December  , 2009.

/s/ Tamara O. Mitchell
United States Bankruptcy Judge

TOM:  ejb

xc:   David Hodges, attorney for Plaintiffs
      Floyd Gaines and Andy Walsh, attorneys for Defendants